USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2 9 AUG 2011

PRO-SE OFFICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------

BEVERLEY GRIFFITH – FENTON and
JOHN DOES No. 1- 10,

Civil Case No.: 11 – CV -4877
Hon. ~~Judge~~ Briccetti

Plaintiffs

-against-

Jury Trial Demanded

CHASE HOME FINANCE & JP MORGAN CHASE
COLDWELL BANKER MOPRTGAGE&COLDWELL BANKER
HOME LOAN

------------------------------×

## FIRST AMENDED COMPLAINT FOR UNFAIR BUSINESS PRACTICES AND UNFAIR DEBT COLLECTION PRACTICES ,RESPA SECTION 6 VOILATION

**1.UNFAIR AND DECEPTIVE BUSINESS PRACTICES**

**(N.Y. Gen. Bus. L§ 349-350)**

**2.UNFAIR AND DECEPTIVE BUSINESS PRACTICES**

**(N.Y. Gen. Bus. L Article 23A§352c)**

**3.ABUSIVE DEBT COLLECTION PRACTICES**

**(15 U.S.C.§1692)**

**4.BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND**

**FAIR DEALING(Direct Contracts)**

**5.PROMISSORY ESTOPEPEL**

**6.UNJUST ENRICHMENT.**

**7.UFAIR AND DECEPTIVE PRACTICES**

1

(N.Y. FIS. Articles 3&4)

8.RESPA Section6

As per Counsel for the Defendant Chase Home Finance or JPMorgan Chase Bank, N.A. a complaint can be dismissed if Plaintiff fails to state a claim upon which relief can be granted .Defense Counsel fails to recognize the counts arising from 15 USC §1692 and Unfair Business Practices.

Plaintiffs Beverley Griffith – Fenton and John Does No. 1 –?(collectively plaintiffs) for all other similarly situated alleges the following based on information and belief, and upon the investigations done by others example [The National Consumer Law Center Inc. October 2009"Servicer Compensation and its Consequences-Foreclosure"], Keller Rohrback LLP et al Class Action Lawsuit: Dianna Montez v. Chase Home Finance and JP Morgan Chase (Bloomberg Business week, Aug 13, 2011) .Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## 1.INTRODUCTION

1.      Plaintiff Beverley Griffith-Fenton and John Does(collective plaintiff) on behalf of all mortgagors in the State of New York whose home mortgage loans are or were serviced by Chase Home Finance or JPMorgan Chase and who(a) have had their mortgage loan go into immediate default and foreclosure by the Unlawful, Deliberate, Un-necessary placement of Property Insurance by the Defendants, that is priced way above market value. This forced-placed homeowner's property insurance is unlawfully translated and masqueraded as a late mortgage payment which precipitated the derailment of the mortgage racking up late fees and illegal fees.

2

The sole purpose of this arbitrarily placed homeowners insurance is to unlawfully push my mortgage loan into foreclosure.(b) who have attempted to get a loan modification from Chase and was presented with the "deny and delay" business strategy and still have had their home fraudulently foreclosed upon even after a Judge's placement of an Automatic Stay of Foreclosure for the working out of a loan modification agreement.

2      Chase had benefited from that foreclosure proceedings to a tune of $77,605.52 in interest payments, late charges and junk fees for servicing that old mortgage loan of my first home ,717 East 222nd Street, Bronx. The Principal balance due on that loan was $183,634.57.Chase received an additional amount totaling $77,605.52 for keeping me tied up in at least two' Trial Payment Plans" without the benefit of a loan modification and finally foreclosure. They had me in a runaround for four years then they put up my home for sale. .Therefore. it did not surprise me that Chase would buy my present mortgage and that Chase would not wait to push my present home into foreclosure.

3.      As set forth in more detail infra ,Plaintiff seeks to bring common law and statuary claims for unfair, unlawful and/or fraudulent business practices in violation of New York State General Business Law§349-350,§352(c), Respa,Section6,New York State Financial Services Law Articles 3&4(effective 10-3-11),New York State Debt and Creditor Law, Article 10 §273(a),NY. Fair Debt Collection Practices Act 15 U.S.C.§1692 et seq.; Breach of Contract, Breach of the duty of good faith and fair dealing ;promissory estoppels; and unjust enrichment.

4      Plaintiff has and had experienced a prolonged period of unfair ,deceptive and misleading practices and breaches imposed on her by Defendants Chase Home Finance LLC and

3

its parent company Defendant JPMorgan Chase also Defendant Coldwell Banker Mortgage over the past four years as she attempts to keep her mortgage payments current ,and make her mortgage payments to the best of her ability.

## 2. FACTS

5     Pursuant to a written agreement dated April 6,2007,  Plaintiff, Beverley Griffith-Fenton took out a purchase money mortgage( hereinafter "Loan") in the amount of $225,000.00 with Coldwell Banker Home Loan for the purchase of a home located at 17 Prospect Ave .in Middletown New York. The loan was at a fixed rate mortgage of 7.151%.The type of the loan was Conventional and the loan was 30 year Fixed (L30) with loan term of 360. The Loan to Value Ratio was 78.95.The initial payment was $1,519.82 which included principal and interest. Tax Escrow was required and a home insurance policy was bought from Leslie Stephenson Insurance Brokerage. The coverage is through Otsego Mutual Insurance Company with fire in the amount of $300,000.00 and liability $100,000.00.The home insurance covered an effective date from4/6/2007 to 4/6 2010 and purchase date was 3/16/2007.

6.     The sale price of the house was $285,000.00.Plaintiff Griffith-Fenton brought a total amount of $74,861.90 to the purchase of this property. The first payment was $15,000.00 to initiate the sale with the seller and the second payment $59,861.90 made out to Ever Home Mortgage Company brought to the closing on 4/6/2007. There was overages in funding at the end of closing but this was not noticed until weeks after when the documents were send to plaintiff. To the best belief of plaintiff overages were approximately $1301.00.A Forensic Mortgage Audit is pending before this court during these proceedings.

7.     The servicing of the mortgage was done by Coldwell Banker Home Mortgage, Mortgage Service Center, PO Box 5469, Mount Laurel NJ 08054, whose parent company is

4

Coldwell Banker Home Loan. They serviced the loan until October 31, 2007, and then it was assigned to Chase Home Finance. All information requested of plaintiff about insurance coverage was answered via email 5/2007 and telephone call and copies of the policy via the regular mail and listed on HUD Settlement Statement..

8.       On February 12 2008 it was discovered that Chase Home Finance(hereafter "Chase") purchased a Homeowners Insurance Policy paid directly from my Escrow Account. Plaintiff was not aware of this until she missed a payment in June2008.A sum of $2,880.00 was taken out of Plaintiff's escrow account to pay for an insurance policy from American Security Insurance Company in Atlanta ,GA 30302.Numerous calls and letters to have Chase return the payment to plaintiff's Escrow Account went unheeded. Plaintiff was told by Chase various staff members will be helping her to resolve this situation, however no one returned her call. Chase continued to(a) improperly remove unlawful fees from my mortgage payments(b) not applying payments correctly to interest and principal payments(c),holding funds in suspense account(d)not properly amortizing the loan (e) misreporting plaintiff to the credit bureau.

9.       There has always been continuous Homeowners coverage with Ostego Insurance Company policy #HO-286996, from 3/16/2007 to present, now paid in full up to 3/16/2012.,on plaintiff's property at 17 Prospect Ave, Middletown Instead of returning the payment Chase continues to mislead and misrepresent the situation. A notice from Chase dated  2/15/08 indicated that there was a placement of insurance on the property and there was also a  notice from American Security Insurance Company dated  4/28/2008 confirming that they have cancelled plaintiff's insurance coverage for the reason that Plaintiff had provided evidence of other insurance coverage. This cancellation went in effect 11/6/2007.(See letter dated 8/19/11 from Insurance Broker confirming continuous coverage.)

5

10      In June '08 plaintiff had missed her mortgage payment..The Nursing Home where she

worked closed down February 8,2008 and plaintiff had to go on  unemployment. The previous

four months mortgage was paid from her 401K retirement account. Nevertheless plaintiff caught

up with her June '08 payment in September'08,with a total mortgage payment of $8,714.00.The

sum of $8556.00 should have been direct mortgage payment, and $ 158.00 was for late fees. It

became  quite apparent that an unlawful act, an unfair and deceptive practice, had just occurred.

Up to that point in the Plaintiff's payment history all required payments were made.  The

plaintiff  may have been late with some payments., but they were always paid along with the

required late charges. Up to that point the Plaintiff's mortgage payments were made online at

Chase's website. Shortly after, the Plaintiff stopped that practice and started sending her

payments via Western Union

11      To the best of  the Plaintiff's knowledge what Chase has held on to  her September

'08payment of $4,000.00  in an 'Unapplied Balance Account'..From that point onward her 'total

payment owed was noticeably increased to the tune of around $2,800.00. This illegal amount

continued and produced all kinds of fees and charges. This  abusive practice continued until

Chase declared foreclosure action  in October with a sale date of July 4,2011. Chase returned my

payment of $2,550.00.

12      In a  letter dated September 29,2008 plaintiff wrote Chase requesting that they return the

money taken from her Escrow Account. Instead, they sent out foreclosure and default notices.

This was followed by harassing phone calls, almost  daily at all times of the day. Most of the

callers were rude...They would called late at night and did not  care to whom they speak from

plaintiff's young son to plaintiff's adult son s in the home.

6

13.     In response to my letter of inquiry and wish dated 9/29/08 Ms. Patricia A. Dalton-Turos ,

Consumer Care Professional at Chase replied in a response letter dated 10/16/08 that my

payments had gone up as of August 1,2008 and that I was advised of this in a June Annual

Escrow Disclosure statement. However  plaintiff had not seen such a Statement prior to her

complaint. Ms Dalton-Turos failed to explain why there was a  shortage in plaintiff's escrow

account Ms. Turos failed to explain the reason for Chase buying a Homeowners policy that was

not needed  and she failed to explain why the cost of the insurance is  not  refunded.. Instead the

letter showed multiple late charges and  inspection fees that were now attached. to plaintiff's

mortgage payment These charges comes on as an extra overdue mortgage payment.

14.     This response of shortage within  plaintiff's escrow account without stating the reason

has been the general theme in addressing all the inquiries made to them on plaintiff's behalf. The

response to Office of the Comptroller of the Currency, Case 1386155 is incomplete and

misleading .because it fails to identify the true cause for the shortage in plaintiff's Escrow

Account.

15.     According to Fannie Mae Single Family/2011 Servicing Guide/Part 11: Mortgage and

Property  Insurance: Chapter 6-Lender-Placed Property Insurance(02/01/05)".In the event the

borrower provides evidence of acceptable insurance coverage, the total amount of any premiums

for lender-placed insurance attributable to the period of time after the effective date of the

borrower placed coverage(along with any late charges assessed due to nonpayment of any lender

placed insurance premium)must be refunded or credited to the borrower within a reasonable time

frame. Chase removed $2880.00  from my escrow account on 2/12/08 and this showed up as an

extra payment for the following month. Despite Plaintiffs  many requests and complaints, the

money has yet to be refunded. Buying an insurance policy four to six months before Fannie

7

Mae's servicing guideline stipulates , makes this behavior by Chase borders on criminality. This act is  unfair and unconscionable. Funds removed from an Escrow Account under false pretenses. long before they could possibly be needed, should be a  considered a crime. Plaintiff was greatly harmed by this act. When such an act harm mortgagors  as plaintiff. and others so similarly situated. Chase is liable.

16.     Ms. Sara Spradling, Executive Resolution Group, in a letter dated April 2, 2009  from a telephone inqurery made  by plaintiff states  "your August 1, 2008 escrow analysis identified a shortage in your escrow account for the following reasons:

- Your homeowner's insurance was not projected to be paid from you escrow account until April 2008; however , an unexpected disbursement was made for homeowner's insurance on September 24 2007, for $2993.00

- Your school taxes increased by $ 216.00, which contributed to the shortage.

- Your cushion increased by $108.82, which contributes to the shortage

- Chase received additional Escrow payments totaling $850.52, which reduced the shortage.

- Your escrow account earned interest payments totaling $ 29.18, which reduced the shortage.Your escrow shortage also included the additional funds of $489.78 that we needed to pay for your higher tax bill, which did not collect before the August 1, 2008 escrow analysis. This is called under- collection."

## 18                    ESCROW ACCOUNT REVIEW(Average Payments)

| (1) Escrow Bill | Annual Amount | Monthly Requirement |
|---|---|---|
| City Taxes | $2742.75 | $228.56 |

8

| | | |
|---|---|---|
| School Taxes | $3576.66 | $298.05 |
| Homeowner's Insurance | $942.00 | $78.50 |
| Shortage Spread | $1151.74 | $95.98 |
| Total Monthly Escrow Payment | $8413.15 | $701.09 |

19    Ms Spradling brought to light the total payments from the escrow account and plaintiff

agreed. Expenditure from escrow account ranged from $8,413.12 to $8,600.00 and plaintiff

agreed. However' plaintiff's contribution to the escrow account totals $12,032.48 for the period

June'07 to May'08.This includes$3,444.48 as the starting balance in the escrow plus$9,588.00

as plaintiff's contribution from the mortgage payments. There should also be an additional

amount of$2060.00 sitting in the account to pay Ad..Ed. Coldwell Bankers will also have to

answer before this court.


(20)    ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT ACCOUNT

HISTORY(COLDWELL BANKER MORTGAGE) December 2007

Projected Escrow Balance                    Actual Escrow

Balance

Starting Balance................................................$2800.36        $2813.60

| MO | PROJ Escrow Deposit | Actual Escrow Deposit | Proj Escrow Payments | Actual Escrow Payments | Proj Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|---|
| 08 | 550.37 | 619.55 | | | 3350.73 | 3433.15 |
| 09 | 550.37 | 1254.90 | H.O.INS | 2993.00 | 3901.10 | 1695.05 |
| 10 | 550.37 | 619.55 | 3350.73 School Tax | 3567.36 | 1100.74 | 1252.76 |

9

| 11 | 550.37 | Transfer Bal | 1252.76 | 1651.11 | .00 |
| 12 | 550.37 | | | 2201.48 | .00 |
| 01 | 550.37 | | | 2751.85 | |
| 02 | 550.37 | 1211.84 | City Tax | 2090.38 | |
| 03 | 550.37 | | | 2640.75 | |
| 04 | 550.37 | | | 3191.12 | |
| 05 | 550.37 | | | 3741.49 | |
| 06 | 550.37 | 1211.84 | City Tax | 3080.02 | |
| 07 | 550.37 | 830.00 | H.O. INS | 2800.39 | |

21    This disclosure statement from Colwell Banker confirmed what Ms Spradling had said $2993.00 was removed from my escrow account for purchase of a Homeowner's policy. Plaintiff knew nothing about this until Ms Spradling brought it to light. Coldwell Bankers most certainly knew there was insurance coverage on the property. In May 2007 Osteogo Mutual Fire Insurance threatened to cancel policy effective 7/2/07 if Sidewalk was no repaired. Sidewalk was repaired 5/26/07 and pictures of repairs and permit for fixing repairs were in via overnight mail. Confirmation of receipt was received via email. Plaintiff also verified on Coldwell Bankers website information on homeowners policy.

22    All mortgage payments were made to Coldwell Bankers. The first payment was a  tellers check sent in May'07.The other payments were via auto deduct from plaintiff's TD Waterhouse account..Chase initial payment was sent to them in check  which they paid over to Chase. November 1,2007.

24      Coldwell Banker Mortgage took over Escrow Account with an initial balance of

$5,504.48. Distributed as follows :$3,444.48  for taxes and $2,060.00 for Ad. Ed. Plaintiff's

contribution from mortgage payment equals$2,959.33 making the total contribution in the

Escrow Account of $8,463.8.Coldwell Banker for June'07 to October '07  expenditure in taxes

equals $4,562.57,therefore  there should be a balance of $3,901.23 in the account .If Ad.Ed was

paid the balance in the escrow account should be $1,841.23. Since they did indicate that they

bought a homeowners policy for $2,993.00 in September 07 and then sold the mortgage in

November'07 to Chase thus only covering the house for only two months. where is my refund of

$2494.16. Coldwell Bankers behavior is unlawful , unfair and deceptive and  harms plaintiff .

Their action is criminal. Coldwell Banker is liable to plaintiff.

(25) CHASE ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT(JUNE 2008)

| DESCRIPTION | MONTH | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT |
|---|---|---|---|
| Beginning Balance | | $0.00 | $0.00 |
| Payment | 08/07 | $0.00 | $0.00 |
| Payment | 09/07 | $0.00 | $0.00 |
| Payment | 10/07 | $0.00 | $0.00 |
| Payment | 11/07 | $619.55* | $0.00 |
| Payment | 12/07 | $0.00 | $0.00 |
| Payment | 01/08 | $619.55* | $0.00 |
| Payment | 02/08 | $619.55* | $0.00 |
| City/ Town Tax | 02/08 | $0.00 | $1,323.90* |
| Hazard Ins | 02/08 | $0.00 | $2,880.00 |
| Payment | 03/08 | $0.00 | $0.00 |
| Payment | 04/08 | $4,119.10* | $0.00 |
| Hazard Ins | 04/08 | $0.00 | $1,042.00* |
| Payment | 05/08 | $619.55* | $0.00 |
| Payment | 06/08 | $0.00 | $0.00 |
| City/ Town Tax | 06/08 | $0.00 | $1,323.89* |
| Payment | 07/08 | $0.00 | $0.00 |
| Payment | 08/08 | $0.00 | $0.00 |
| Total | | $6,597.30 | $6,569.79 |

26

## 27    . OVERVEIW OF PLAINTIFF'S PAYMENTS

| Year/Month | Plaintiff's Payments | Interest/ Principal | Late Charges | Escrow |
|---|---|---|---|---|
| Initial Escrow(4/16/07) | | | | $2,911.38 |
| 2007JUNE (5/22) | $2070.00 | | | $550.37 |
| 2007JULY(7/07) | $2070.00 | | | $550.37 |
| 2007AUGUST | $2169.00 | | $30 | $550.37 |
| 2007SEPTEMBER | $2169.00 | | $30.00 | $550.37 |
| 2007 OCTOBER(10/30) | $2169.00paid to Chase for 11/1/07 payment | | $30.00 | |
| TRANSFER BALANCE TO CHASE | | | | -$1252.76 |
| 2007November(1) | $2140.12 | $1993,PRINC. | | |
| 2007 November | | $1519.82 | ---- | $620.30 |
| 2007 December (11/23) | $2140.12---- | $1519.82---- | ---- | $620.30---- |
| 2008 January | $2169.70 | $1519.82 | $30.00 | $619.55 |
| 2008 February (2/16) | $2139.37 | $1519.82 | $30.00 | $619.55 |
| 2008 March | ---- | $1519.82 | $30.00 | $619.55 |
| 2008 April (4/4) | $4309.12 | 1519.82 | | $619.55 |
| 2008 May (5/24) | $2169.75 | 1519.82 | 30.00 | $619.55 |
| 2008 June | ---- | 1519.82 | ---- | $480.20 |
| 2008 July | $2500.00 | 1519.82 | $60.00 | $980.20 |
| 2008 August (8/9) | $2214.13 | 1519.82 | ---- | $694.33 |
| 2008 September (9/22) | $4000.00 | 1519.82 | $30.00 | |
| 2008 October (10/25) | $2080.00 | 1519.82 | $30.00 | $530.02 |
| 2008 November (11/25) | $2080.00 | 1519.82 | $30.00 | $530.02 |
| 2008 December (12/26) | $2080.00 | 1519.82 | $30.00 | $530.02 |
| TOTAL | | | | $9,188.78 |

## 28. REVELATIONS OF THE ESCROW REVIEW

*There were no mortgage loan payments missing between June'2007 and May 2008.However there were many late payments made.

*Total  payments to Escrow Account should have ranged between $8,250.00 and $8,899.34 and no less.

*Total legitimate payments from escrow$6,614.41.(taxes and legitimate insurance).

*Balance remaining in Escrow Account should range from$1,635.00 to $2,284.90.

*Instead there was a negative balance generated by Chase for $1225.25. in June '2008,when the city tax came in for$1,323.87. From this one act all mortgage payments get sucked up into Suspense Funds,Late Charges ,Inspection fees before the valid interest on the loan gets paid This Escrow account was deliberately and fraudulently mismanaged for the sole purpose of driving this  mortgage loan into default and foreclosure.

29 *.Chase and Coldwell Bankers removed a total  amount of $5,873.00 for the purchase  of other Homeowner's insurance policies between June'2007 and May '2008 despite alluding to the legitimate homeowner's insurance policy of $830.00 in July'07/'08.There was never a  property more insured than 17 Prospect Ave, all  three homeowner's policy  in the same time period .Coldwell Banker removed a sum of $2993.0 in September'07 and Chase removed a sum of $2880.00 in February'08 for purchase of the same insurance coverage to plaintiff's home. This illegal  and fraudulent mismanagement to the escrow account was only for the sole purpose of driving this  mortgage loan into default and into foreclosure.

13

30   *PLEASE SEE LETTER FROM LEGITIMATE INSURANCE BROKER  dated

8/19/2011,Mr .Leslie G Stephen confirming that there has been continuous

Homeowners Insurance Co.,policy#H0-286996 paid in full from 3/16/07 to present

3/16/2012..Plaintiff purchased the first policy3/16/07 with a payment of $830.00 for

effective dates 4/6/07 to 4/6/08.There was nowhere since it inception was this policy ever

canceled. There  was a threat of cancellation in May'07 if sidewalk was not repaired by

June'07.Sidewalk was replaced 5/26/07 and pictures of repairs, permit for repair was

sent in to Ostego insurance company with confirmation of receipt via email dated 6/'07.

31   *Chase purchased this mortgage loan from Coldwell Banker 11/1/07 and was

aware of all the multiple insurance policies on this home yet on February 12,08,they

purchased a similar policy for $2,880.00.then hid this amount as Past Payment due on

the Mortgage Statement. Therefore  this Past Payment Due went undetected until

September of '08 when plaintiff legitimately missed a payment in June'08 and past

payment due amounts was incorrect  on Mortgage Statement. Plaintiff was in the habit

of making late payments.

32   Chase purchased this  homeowner's insurance policy for $2,880.00 on my present

home in February 12,2008 but approximately one year to the day before February

27,2007,Chase collected 'foreclosure proceedings to a tune of over $77,605.52 when I had

to hasten to sell my first home. Chase walked away with a Lion's share .of that sale Before

any transaction  was completed Chase verified that the person at 17 Prospect Ave,

Middletown and the person at 717 E 222nd were one of the same. I have been a victim of

Predatory Lending.

14

33   Chase incorrectly registered my initial payment of November 1 mortgage loan payment under Principal Paid. This  payment was sent in between 10/26/07 to 10/30/07.This action would help to hasten a shortage in the escrow account.(Plaintiff is in the habit of making initial payments before due date.) Therefore no payment was made to escrow account in November 2007.


34   *Fannie Mae Single Family/ 2011Servicing Guide/Part11: Mortgage and Property Insurance/11Chapter 6:Lender-Placed Property Insurance(02/01/05)

Lender-placed insurance coverage should only be issued after servicer makes attempt to contact borrower to obtain evidence of insurance. The servicer may contact the borrower's insurance agent but must contact the borrower if it fails to obtain evidence of insurance from the agent.---------Plaintiff verified all insurance questions

when asked. Coldwell Bankers  asked sometimes in June'07.The answer was given online at their website and numerous documentations(evidence).Chase had numerous interactions with borrower's Insurance Broker. providing evidence of insurance coverage and multiple documentations.

35   These unscrupulous  Mortgage Lenders already knew that there was an insurance coverage was in place, they were only unlawfully seeking a way in which to place these two very expensive insurance coverage into plaintiff's  escrow account for the sole purpose of derailing this mortgage loan into default and into foreclosure. Chase placed a lender-placed in the tune of $2,880.00 on 2/12/08 and less than six months before that Coldwell Banker placed a lender-placed insurance of $2993.00 for the same

insurance. Both lenders were aware of the prevailing Insurance Coverage. Both lenders

have had multiple conversations with Borrower's Insurance Broker. Both lenders are

liable for the mismanagement of the Escrow Account and are also criminally liable.

36     In complaining to one of their unnamed employee at Chase Employee states.'It

does not matter where I go or to whom I complain, I will always have to come back to

them at Chase."

37     According to Fannie Mae's Servicing guideline———" In the event borrower

provides evidence of acceptable insurance coverage, the total amount of any premiums

for lender-placed insurance attributable to the period of time after the effective date of

the borrower placed coverage(along with any late charges assessed due to non-payment

of any lender placed premium) must be refunded or credited to the borrower within a

reasonable time frame.———According to this criteria all monies used to purchase

these un-needed ,un-necessary homeowner's insurance policies should have been

refunded in total. There would have been no need for a negative balance in the  escrow

account. City Tax would have been paid as it should. My June'08 missing  mortgage

payment would have been fully caught up in  September"08 and all legal late fees would

have been satisfied. Instead what happened was Chase removed cash flow of $2,880.00

in2/12/08 unnecessarily with the intent  of shorting the account so that any payments

coming in can  be held in suspense and generate more income for them. This practice is

unfair and borders on criminality. Coldwell Bankers removed the sum in the amount of

$2993.00 five months before  9/24/11.

38      According to RESPA Section 6——As long as the mortgage is not more than 30
days late, Section 6 of RESPA requires lenders to make escrow payments, for taxes
,insurance ect., in a timely manner.—— This regulation may be the loop hole that these
unscrupulous lenders used in bad faith for the purchase of three overlapping insurance
policies within the same year. However plaintiff has never been more than 30 days late
until June'08.

39      *Plaintiff had never saw seen an Escrow Disclosure Account  Statement from
Chase until sometimes in October '08 after a written request to explain themselves and
return the monies taken out of the escrow account..

*No monies were returned ,no explanation as to why the Insurance bought 2/12/08 was
needed and no ramifications of the insurance as per Fannie Mae's servicing guidelines.
In the mean time they continue to rack up late charges, and junk fees. They also
continue to report late payments to the credit bureau. It took almost another year April
'09 before a correct answer was given to plaintiff by Ms. Sara  Spradling.

40      *Chase was in a hurry to have  plaintiff backed into a default and foreclosure
status Almost one year to the day ( February 27,2007) they had plaintiff in foreclosure
proceedings from which they collected a Lion's share of  $77,605.52 (in interest, late fees
and junk fees ) and I had to hasten to sell my first home .before losing it in a Foreclosure
sale. .Chase pretended to be providing me with a loan modification, when in fact  what they
did was to go behind my back, had Hon. Judge Stinton automatic stay on Foreclosure
proceedings removed and then hasten for a sale date on that property. Chase walked away
with a Lion's share. Before  any of our present transaction Chase verified that the person at

17

17 Prospect Ave, Middletown and the person at 717 E 222nd were one of the same. I have

been a victim of Predatory Lending. Chase had profited from my misfortune, my compliance

and my desire to keep my home.

41      *Chase had had plaintiff in a runaround, deny and delay business strategy from

their arsenals of unfair business practices US 15§1692.This runaround lasted four

years. They started foreclosure proceedings on that property at 717 E 222nd Street,

Bronx sometimes in 2003.It was at the time when they were' robo-signing' foreclosure

summons.{They had me down in court documents as a black woman,5feet 4 inches tall

and 130 lbs..I wished that was true., but with my yearly physical exams I let the judge

know I could not be that person. Nevertheless I answered the summons because it came

in the mail.).

42      *Chase lied again in written court documents and I quote" Modifying the

automatic stay imposed by 11USC§362(a)------and the court having held a hearing on

the motion on November 17,2005a AND THE COURT HAVING ENTERED AN

ORDER CONDITIONALLY LIFTING THE  AUTOMATIC STAY ON THE

CONSENT OF DEBTOR AND CREDITOR-----------These statements are false and

misleading. I was never privy to any hearing on November17 2005.I was never a served

a copy of said motion nor did I receive it in the mail. These statement came to light in a

complaint  Chase filed in the Bankruptcy Court. To the best of my belief in

November'05 ,the Hon. Judge Stinton in the  Bronx County Court, had placed an

automatic stay on their foreclosure  proceedings for the purpose of working out a loan

modification with plaintiff. They went behind plaintiff's back and  had the automatic

stay lifted.To the best of my beliefs the automatic stay was to allow me time to work ou

a loan modification with Chase. Around that time Chase contacted me about modifying my loan and requested a number of papers like pay stubs, bank statements ect.I sent all the requested documents but I never heard from them again. All my calls went to the loss mitigation department and I have spoken to repayment analysts like Ms Clegg and Ms Camille Jones being assured some plan is in the works.  After about a  year I became worried that  nothing was happening. It was then I contacted Ms Shawna Nelms from an organization in Washington DC that helps victims of predatory lending. Ms.Nelms resubmitted all the  necessary documents and assured me that a loan modification was being worked out. It was therefore surprising to  me when a Judgment for Sale Notice in the mail with a sale date 2/22/06.Ms Nelms assured me repeatedly that a modification is being worked out. However when about fifty investors came around to the property and started calling ,I filed bankruptcy ,chapter13,on 2/16/06. And sold the property one year later 2/27/07.Now on 2/12/08 Chase has made unlawful ,illegal moves to precipitate my new home loan into default and foreclosure status.

## JURISDICTION AND VENUE

**43**   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is between citizens of different states, a class action has been pled, and the matter is controversy exceeds the sum or value of $5,00,000, exclusive of interest and costs.

**44**         This court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1367 in that the plaintiff and the Class are intended third party benificiaries to a contract between JPMorgan Chase, N,A, and the United States through its Financial

19

Agent Fannie Mae that was entered into pursuant to and under the direction of the Troubled Asset Relief Program ("TARF"). 12 U.S.C. §5201, *et seq.*

45       Venue is proper in this District under 28 U.S.C, §§1391(a), (b), and (c). Chase Home Finance LLC  and JPMorgan Chase Bank, N.A. do substantial business in the state of New York and within this Federal Juridical District, receive substantial compensation and profits from the serving of home mortgage loans in this District, have made material omissions and misrepresentations, breached contracts and/or other  promises, and engaged in unlawful practices in this district, and the property for which Chase Home Finance LLC is the mortgage loan servicer is in this District.

46       This Court has personal jurisdiction over the Defendants to this action because Chase Home Finance LLC and JPMorgan Chase Bank, N.A. and Coldwell Banker Home Loan and Coldwell Banker Mortgage Service Center do substantial business in the state of New York.

## . PARTIES

47.     Plaintiff lives in Orange County, New York, Her loan mortgage for the property located in New York was originally held by Coldwell Bankers and on information and belief was transferred to Chase in the fall of 2007.

**48.     Plaintiff John Does are all class members who are similarly situated as Plaintiff. Their  mortgages are serviced by Chase  and or Coldwell Bankers**

49      Defendant Chase Home Finance LLC is a mortgage bank and a home mortgage loan Servicers servicing mortgages on behalf of lenders and investors including pooled mortgage –

20

back securities. Chase Home Finance LLC is a Delaware corporation and is wholly owned subsidiary of JPMorgan Chase Ban, N.A.

50        Defendant JPMorgan Chase, N.A. is a national banking association with corporate headquarters located at 270 Park Ave, New York, N.Y. 10017

## BACKGROUND

51        The Foreclosure crisis of 2007 was believed by many to be driven by risky loans and the crashing housing market was driven by the delinquency rate. However according to Realty Trac, a company that specializes in market research"We have actually had a sea change in what is causing the foreclosure crisis". Today many homeowners are struggling to make payments simply because of the weak economy ,like companies going out of business, lay-offs, unemployment and underemployment –economic displacement (Alex Viega, Foreclosure Activity Up Across Most Metro Areas, The Associated Press,Jan27,2011).Realty Trac as reported by the New York Times showed that banks currently own more than 872,000 homes as a result of foreclosures, almost twice as much as when the financial crisis began in 2007.An additional one million homes are being foreclosed upon nationally.(R Manning,-It's official,Aug.17 2011)

52   In the article New York Times, May 24, 2011---"As housing goes so goes the economy" Banks often do not own the troubled loans they are servicing, but rather they service loans for investors who own them. As servicers in charge of collecting payments and managing defaults, banks make more fees and charges on defaulted loans than on loan modification. Defaults proceed and modifications lag. Banks win. Homeowners and investors loose. The economy suffers. I, Beverley Griffith-Fenton, am a living testament to these truths.

53  According to the publication "Why Servicers Foreclose When They Should Modify and Other Puzzles of Servicer Behavior" by Diane E. Thompson of the Counsel, National Consumer Law Center – 2009 (VL). Servicers have four main sources of income listed in descending order of importance.

a) The monthly servicing fee, a fixed percentage of the unpaid principal balance of the loans in the pool;

b) Fee charged borrower in default, including late fee and "process management fee"

c) Float income , or interest income from the time between when the servers collect the payment from the borrower and when it turns it over to the mortgage owner; and

d) Income from investment interests in the pool of mortgage loans that the servicer is servicing.

Overall, these sources of income give the servicers little incentive to offer sustainable loan modifications and (much more)*some incentive to push loans into foreclosure*. The monthly fees that the servicer receives, base on a percentage of the outstanding principal of the loans in the pool, provides some incentives to servicers to keep loans in the pool rather than to foreclose on them but also provides a significant disincentive to offer principal reductions or other loan modifications that are sustainable on the long term. In fact, this fee gives servicers incentive to increase the loan principal by adding delinquent amounts and junk fees. Then the servicer receives a higher monthly fee for a while, until the loan finally fails. *Fees that the servicers charge borrowers in default reward servicers for getting and keeping borrowers in default*."

"Servicers, lose no money from foreclosures because they recover all of their expenses when a

loan is foreclosed before any investors get paid." The rules for recovery of expenses in modification are less clear and some-what less generous.

54      "While Chase receives $1000 from the US Government for each HAMP modification it processes it makes significantly more money by collecting fees and interest on loans that are past due, in default, or otherwise troubled. Based on this unfortunate reality *__Chase devised tactics to push  borrowers into default and keep them there while they delay and then deny the loan modification process in order to collect excessive fees on troubled mortgages Thus by stringing a mortgager along in a draw out loan modification process Chase can maintain its fees without having to actually modify.__*

55      The Home Affordable Modification Program(HAMP) has been a failure largely due to servicer abuses. So says Ala Pierce & Paul Kiel Pro Publica By Numbers: A Revealing Look at the Mortgage Modification Meltdown, March 8, 2011 pg. 11.Since its inception inApril 2009 the average rate of modifications in the past two years is not significantly  different than before HAMP was launched. As of December 2010,two  million homeowners have had their HAMP application rejected—1.3million were denied even a trial modification and about 700,000 more had their trials cancelled. Since HAMP's inception, the number of trial modifications cancelled by participating servicers like Chase has vastly exceeded the number of conversions to permanent modifications.

## Chase's Impact on Mortgagors is Significant

56      Chase Home Finance LLC is a loan servicer operated by JPMorgan Chase Bank, N.A. As of November 18, 2010, Chase was servicer for over nine million loans with total value of $1.2 trillion. *Robo – Signing, Chain of Title, Loss Mitigation and Other Issues in Mortgage Servicing : Hearing Before  Subcomm. On Insurance, Housing, and Community Opportunity,* 11th Cong.,

Panel Two (Nov. 18, 2010)(written testimony of Stephanie Murdick, head of the "Office of Consumer Practices" at Chase)

57     On information and belief , Chase has a significant servicing presence in New York. Along with having retail bank locations throughout the state, Chase maintains seven "Homeownership Centers" throughout the state of New York,/New Jersey where according to Chase's website, ;Struggling customers can… meet face to face with loan advisors to talk about their situation."

58     Yet, Chase has modified less than a quarter of mortgages of "seriously delinquent" borrowers; the vast majority of the balances of such mortgages are "unresolved" with neither modification nor a foreclosure. Pierce et al, *Meltdown* (analyzing Moody's data on 300,000 subprime loans more than three months behind , all of which currently sit in mortgage- backed securities). Indeed, Moody's data reveals that "[t]he *worst* [servicer] was JPMorgan Chase, ,where the average modification occurred 11 months after the  borrower fell behind. Chase and its affiliates have denied modifications, cancelled modification trial periods and left mortgagors in a limbo at a rate of approximately 57% according to Treasury Department data.


### Count 1

**Unfair And Deceptive Business Practices**

**(N.Y. Gen. Bus L 349-350)**

1. **Plaintiff herby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.**

2.  The NYL defines unfair business competition to include and "unlawful, unfair or fraudulent " act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. N.Y. Gen, Business 349

3.  A business act or practice is "unlawful" if it violates any established state or federal law.

4.  Defendants have violated, and continue to violate the "unlawful" prong of the NYL by breaching Chase's agreement with Fannie Mae of which the Plaintiff and class are intended beneficiaries. Defendants further violate the unlawful prong of the N.Y Gen. Bus  Law by violating  the Fair Debt Collection Practices Act Cal. Civ. Code 15 USC§1692. Defendants have also breached direct contracts with Plaintiffs and the proposed Class and have breached their duties of good faith and fair dealing, as well as engaged in other common law violations (promissory estoppels and unjust enrichment). Defendants have engaged, and continue to be engaged, in unlawful business practices within the meaning of N.Y. Gen. Bus. Law 349

5.  Through their unlawful acts and practices, Defendants have obtained, and continue to unfairly obtain, money from Plaintiff and members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all Class members, and to enjoin Defendants from continuing to violate the Unfair Competition Law as discussed herein. In addition, Plaintiff requests that this Court cause Chase to refund all excessive and unlawful fees or other charges assessed to Plaintiff and the Class in the Course of its scheme. Otherwise, Plaintiff and the class may be irreparably harmed and /or denied an effective and complete remedy if such an order is not granted.

# Count 2

**UNFAIR AND DECPTIVE BUSINESS PRACTICES**

**(N.Y. Gen. Bus. L Lanham Act)**

1. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

2. The NYL defines unfair business competition to include and "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. NY. Gen. Bus. Law.

3. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

4. Defendants have and continue to violate the "unfair" prong of the NY Gen. Bus. L by inviting Plaintiff and Class members to participate in loan modification programs, taking their trial payments without the intention of permanently modifying their loans. Among other things, Chase Home Finance LLC and JP Morgan Chase Bank, N.A., have, in bad faith, failed to grant promised permanent loan modifications to qualifying applicants following such applicants' complaint participation in temporary payment plans or other temporary modification agreements; failed to take reasonable steps to work with eligible mortgagors to establish permanent modifications; misrepresented the status of loan modification applications; repeatedly requested duplicative financial information; erected artificial obstacles in the modifications, failed to keep accurate records of mortgagor

accounts, including accounting for fees, payments, credits, arrearages, and amounts owed; failed to keep accurate records of applicants' scores on standard NPV tests; failed to provide account information requested by mortgagors, failed to provide adequate explanations of fees charged to mortgagors; charged excessive, unlawful, and unreasonable fees; inexplicably and arbitrarily increased mortgagor debt obligations; failed to properly apply mortgagor payments in whole or in part; rejected payments entirely without justification; cause improper interest and other fees to accrue; breached modifications agreements, and unlawfully proceeded with foreclosures based on mortgagors' failure to meet impossible and shifting demands.

5. The gravity of the harm to member of the Class resulting from such unfair acts and practices outweighs and conceivable reasons, justifications and/or motives of defendants for engaging in such deceptive acts and practices.

6. By committing the acts and practices alleged above, Defendants have engaged, and continue, in unfair business practices within the meaning of New York  General Business Code 349, *et seq*

7.Through its unfair acts and practices, Defendants have obtained , and continue to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all Class members, and to enjoin Defendants from continuing to violate the Unfair Competition Law as discussed herein. In addition, Plaintiff requests that this Court cause Chase to refund all excessive and unlawful fees or other charges assed to Plaintiff and the Class in the course of its

27

scheme. Otherwise, Plaintiff and the class may be irreparably harmed and/or denied an effective and complete remedy if such and order is not granted.

# COUNT 3

**ABUSIVE DEBT COLLECTION PRACTICES**

**New York Fair Debt Collection Practices Act § 600 et.seq.(15 U.S.C 1692)**

1. Plaintiff hereby incorporates the foregoing paragraphs of this complaint and restates them as if they were fully written herein.

2. Defendants are "debt collectors" engaging in "debt collection" practices under the New York Fair Debt Collection Practices Act

1. Defendants violated the N.Y .Fair Debt Collection Practices Act by using false, deceptive, and misleading statements and deceptive omissions in connection with its collection of Plaintiff's and Class's mortgage debt, as alleged herein.  incorporating 15 U.S.C. 1692 (e).

2. The NY Fair Debt Collection Practices Act allows for class actions to the same extent permitted under the federal Fair Debt Collection Practices Act ("FDCPA").

3. Plaintiff and the Class have suffered damages and harm as a result of Chase's unfair debt collection practices, including irreparable harm to their credit and the amount paid out in unfair and unlawful fees, ,unnecessary placement of homeowners insurance for the purpose of increasing the likelihood of loan in default  trial loan, modification plan.

## COUNT 4
## (PROMISSORY ESTOPPEL)

1.    Plaintiff repeats and re- alleges each and every allegation contained above as if fully set forth herein.

2.    Defendants made representations to Plaintiff and members of the Class that if they performed under TTPs or other temporary modification program arrangements, including under HAMP, that they would receive a permanent loan modification.

3.    Defendants intended to induce Plaintiff and members of the Class to rely on these representations and make both down payments and subsequent monthly payments under TPPs or other temporary modification agreements.

4.    Plaintiff and members of the class did in fact reasonably rely on Defendants' representations, by submitting payments, as well as documentation requested by Defendants.

5.    Reliance by Plaintiff and members of the Class was reasonable

6.    Reliance by Plaintiff and menders of Class was their detriment. Plaintiff and members of the Class have yet to receive permanent loan modifications, have lost opportunities to fund other strategies to deal with their default and avoid foreclosure, have faced financial burdens and psychological stress, and have a given up valuable time and effect to meet Defendant's demands.

7.    Many members of the Class have been further harmed by the foreclosure of their homes after making payments under temporary modification programs that they would not have made had they known that Defendants would refuse to permanently modify their loans and or foreclose in any event.

## COUNT 5

## (Unjust Enrichment)

1.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

2.      At all times relevant hereto, Defendants serviced residential mortgage loans in New York.

3.      Plaintiff and members of the Class conferred upon Defendants, without knowledge of the unlawful or deceptive pattern and practice in which defendants were engaged, mortgage payments, including fees, interest, and other charges, benefits that were non-gratuitous. These benefits were beyond that to which defendants are or were entitled. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and the members of the Class even though Plaintiff and the members of the Class were not receiving the quality of or fairness in mortgage loan servicing that had been represented by Defendants, or that reasonable mortgagors would have expected. Defendants induced mortgagors, including Plaintiff and members of the Class, to continue making mortgage payments and continue negotiating for permanent modifications that Defendants had no intention of granting. Accordingly, defendants made promises of permanent loan modifications that were illusory. Further, Defendants have prolonged modification process to generate revenue for themselves, and delayed foreclosures until the time at which such action would produce optimum, or at least increased, profits to Defendants. Retaining the non- gratuitous benefits conferred upon Defendants by Plaintiff and the members of the Class under these circumstances is unjust and inequitable.

4.      accordingly, Plaintiff and the members of the Class are entitled to, and herby seek, disgorgement and restitution of Defendants' enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the court t and/ or for the benefit of plaintiff and members of the proposed Class.

## COUNT 6

### Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing
### (Direct Contracts)

1      Plaintiff repeats and re-alleges each and every allegations contained above as if fully set forth herein.

2      The Trial Payment Plans and other written agreements pursuant to which Plaintiff and members of the Class made payments and gave other valuable consideration constitute valid offers

3      By executing the  Trial Payment Plan and other forms and returning them to Defendants along with supporting documentation and down payments, Plaintiff and members of the class accepted defendants offer.

4      Alternatively, return of Trial Payment Plan or other forms by Plaintiff and members of the Class to Defendants constitute valid offers. Acceptance of these offers occurred when Defendants accepted payments from plaintiff and members of the Class as specified in these documents.

5      The payments made by Plaintiff and members of the class pursuant to "Trail payment Plan" or other forms, constitute consideration. By making these payments, Plaintiff and the members of the Class gave up the ability to pursue other means of saving their homes from foreclosure.

6.      Plaintiff and members of the Chase have demonstrated their willingness to perform under the contracts.

7      Many members of the Class have been further harmed by the foreclosure of their homes after making payments under temporary modification programs that they would not have made

31

had they known the defendants would refuse to permanently modify their loans and/or forclose in any event.

## COUNT 7

### (Breach of Contract/ Breach of the Duty of Good Faith and Fair Dealing (Third Party Beneficiary Theory))

1.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

2.      Chase's Servicer Participation Agreement ("SPA") for the Home Affordable Modification Program, as well as the explicitly incorporated HAMP program documentation, constitutes a contract for which Plaintiff and the Class are intended beneficiaries, and under which Chase has undertaken duties to act for the benefit of Plaintiff and the Class.

3.      By entering into the SPA and accepting valuable consideration from the U.S. Treasury, Chase covenanted to administer it's contractual obligations with principles of good faith and fair dealing.

4.      Defendants have breached these contractual duties by failing to provide eligible borrowers with the opportunity to accept permanent loan modifications and by wrongfully collecting payments and fees.

5.      Defendants routinely and regularly breach these contracts and/ or their duties of good faith and fair dealing under these contracts by:

> A.      misrepresenting the requirements for achieving permanent modifications and status of modification applications;

> B.      failing to offer Plaintiff and the Class permanent loan modifications, including but not limited to modification under HAMP;

C.      requesting and accepting payments under TPPs or other temporary programs as a condition for promised permanent law modifications, offers of the opportunity to obtain a "permanent workout solution", and/ or promises of foreclosure, forbearance, without any intention to permanently modify the loans, and without taking diligent or reasonable steps to implement permanent loan modifications, provide a "permanent workout solution," or case foreclosure activity;

D.      requesting and accepting payments beyond the term specified under the TPPS and other temporary programs as a condition for promised modifications, "permanent workout solutions," and/ or promises of foreclosure forbearance;

E.      collecting unreasonable and/ or inadequately disclosed fees, interest, or other charges;

F.      misrepresenting the terms of and the balance of the loans being serviced;

G.      improperly applying mortgage payments to accounts, failing to acknowledge receipt of payments , and / or holding mortgage payments in "suspense", resulting in escalated debt obligations, including additional fees, interest, and other charges;

H.      pursing foreclosure (either by initiating or continuing existing proceedings) against mortgagors in a temporary modification program;

I.      failing to provide written notices required by HAMP;

J.      failing to provide explanations of fees assessed to mortgagors assessed under temporary modification programs

K      failing to retain, employ, and supervise adequately trained staff; and/ or

L.      deliberately acting to delay, prolong, or otherwise frustrate the loan modification process, including but not limited to routinely demanding information already in

33

Defendants' files, making inaccurate calculations and determinations of the eligibility of

Plaintiff and members of the Class for loan modifications, and failing to follow through

on written and implied promises.

6.      Plaintiff and members of the Class have suffered harm, including financial harm and

psychological stress, and are threatened with additional harm as a direct and proximate result of

Defendants' breaches. By making payments under temporary modification programs and by

comtinuing to make mortgage payments thereafter, Plaintiff and members of the Class forgo

other remedies that might be pursued to save their homes, such as restructuring their debt under

the bankruptcy code, or pursuing other strategies to deal with their defaults , such as selling or

renting the homes.

7. Many members of the Class have been further harmed by the foreclosure of their homes after

making payments under temporary modification programs that they would not have made had

they known that Defendants would refuse to permanently modify their loans and/ or foreclose in

any event.

*Chase devised tactics to push  borrowers into default,like removing funds from the escrow*

*account to buy homeowners insurance policy,doubly insuring the property, and keep them*

*there while they delay and then deny the loan modification process in order to collect excessive*

*fees on troubled mortgages Thus by stringing a mortgager along in a draw out loan*

*modification process Chase can maintain its fees without having to actually modify.*

This complaint will be further amended up on further discoveries. Attached is Insurance Broker's letter dated August 19,2011,confirming continuous insurance from 3/16/07 to 3/16/2012..

## VII. PRAYER FOR RELIEF

1      WHERE FORE, Plaintiff, for herself and all others similarly situated, respectfully requests that this court enter a judgment against Chase Home Finance LLC and JPMorgan Chase Bank, N.A, and in favor of Plaintiff and the Class, and grant the following relief:

A.      Determine this action may be maintained as a class action , pursuant to the appropriate subsections of Rule 23 of the Federal Rules of Civil Procedure; that the Court certify a class action with respect to particular issues if appropriate; that the Court designate and appoint the named Plaintiff to serve as Class Representative, designate and appoint the undersigned Plaintiff as representing herself before the law.

B.      Enjoin defendants from engaging in fraudulent, unlawful, or unfair business practices in the course of servicing residential mortgage loans;

C.      Enjoin Defendants from ignoring or falling to process loan modification applications and instead proceeding with non- modification procedures that premised upon their deceptive, fraudulent, unlawful, misleading, or unfair business practices in the course of servicing residential mortgage loans;

D.      Declare the conduct of Defendants as alleged herein to be unlawful violation of the NY Fair Debt Collecting Act;

E.      Declare the conduct of the Defendants a alleged herein to be an unlawful violation of the NY Fair Debt Collection Practice.

F,      Require defendants to submit to outside audits and oversight, paid for by

Defendants, on regular basis to ensure that their mortgage loan modification procedures

are fair and reasonable, and that mortgagors receive adequate disclosure.

G.      Order Defendants to adopt and enforce a policy that requires appropriate training

of their employees and agents regarding their duties with respect to loan modifications,

including HAMP;

H.      Award damages to Plaintiff and members of the Class for all payments made

pursuant to Defendants' unlawful practices, including unreasonable fees, interest, and

other charges paid;

I.      Require Defendants to adjust the accounts of Plaintiff and members of the Class

to eliminate and accrued fees, interest, or charges that were unlawfully assessed and

currently constitute debts owed by Plaintiff and members of the Class;

J.      Declare the acts and practices of Defendants described above to constitute breach

of contract and a breach of the duty of the duty of good faith and fair dealing;

K.      Order specific performance of Defendants' contractual obligations to Plaintiff and

the members of the Class, together with the relief required under contract;

L.      Order specific performance of Chase's contractual obligations to the Federal

National Mortgage Association ("Fannie Mae") under the SPA, for which Plaintiff and

the members of the Class are intended beneficiaries, together  with other relief required

under contract;

M.      Require Defendants to review and process all applicants for residential loan

modification in a timely manner and without the delay and increased expense routinely

imposed by Defendants of Plaintiff and members of Class.

N.    Require Defendants to offer permanent modifications to all eligible members of the Class under Contract or under the doctrine of promissory estoppels;

O.    Require Defendants to disgorge, to Plaintiff and members of the Class, all revenues earned as a result of their unlawful acts and practices „tactics of placing and keeping loans in default and protracted loan modification negotiations;

P.    Award costs to Plaintiff and members of the Class for any fees or expenses incurred in wiring payments to Defendants under and temporary provisional modification plan or for any payments that were improperly rejected by Defendants;

Q. Grant Plaintiff and Members of the Class awards of actual, statutory, and / or compensatory, damages in such amount to be determined at trial and provided by applicable law, to include but not limited to payments made under "TPPs" or other temporary modifications programs, as well as associated fees, interest, or other charges;

R.    Grant Plaintiff and members of the Class awards of punitive and/or exemplary damages as provided by applicable law, including due to Defendants' oppressive, fraudulent, and/ or malicious conduct in servicing mortgage loans;

S.    Grant Class Members their costs of suit, including reasonable attorneys' fees, Costs, and expenses a provided by law;

T.    Grant Class Members both pre-judgment and post-judgment interest as provided by the law;

U.    determine that Defendants are jointly and severally liable for the conduct alleged herein; and

V.    Grant Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just , equitable, and proper by this Court.

JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable

DATED this29th day of August,2011

Beverley Griffith-Fenton

Attorneys to be named pending

# Leslie G. Stephenson

### INSURANCE BROKERAGE

3859 WHITE PLAINS ROAD • BRONX, NEW YORK 10467
TELEPHONE (718) 655-2631 • FAX (718) 515-3240

August 19, 2011

**To Whom It May Concern:**

Re: Beverley P. Griffiths-Fenton
17 Prospect Ave
Middletown, New York 10940

Please advised, that **Beverley P. Griffiths-Fenton**, has had continuous Homeowners coverage on the above property, from 03/16/2007 to present. Policy is with **Otsego Insurance Co., policy# HO-286996**, paid in full until 03/16/2012.

Should you need additional information, please do not hesitate to contact us at the above address or telephone number.

Sincerely,

Leslie G. Stephenson
**Excess & Surplus Lines Broker**

AUTO • LIVERY • TRACTOR TRAILER • HOME OWNERS • RESIDENTIAL • COMMERCIAL

# Affidavit of Service

August 29, 2011

Civil Case No: 11-cv-48

Hon. Judge Briccetti

Beverley Griffith-Fenton
John Does No.1 – 10

## Plaintiffs

against

(1) Chase Home Finance & JP Morgan Chase
(2) Coldwell Banker Mortgage & Coldwell Banker
Home Loan.

Defendants

This is to certify that the above
Defendants (1) Chase Home Finance & JP Morgan Chase
as represented by Cullen & Dykman LLP
100 Quentin Roosevelt Blvd
Garden City, N.Y 11530

(2) Coldwell Banker Home Loan
3000 Leadenhall Rd.
Mount Laurel, NJ 08054

Were Served: First Amended Complaint for
Unfair Business Practices & Unfair Debt
Collection Practices, RESPA Section 6 Violation

Beverley Griffith-Fenton
8/29/11

For delivery information visit our website at www.usps.com®

PARSIPPANY NJ 07054

| | | |
|---|---|---|
| Postage | $ | $5.10 |
| Certified Fee | | $2.85 |
| Return Receipt Fee (Endorsement Required) | | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $10.25 |

0133

Postmark Here AUG 29 2011

08/29/2011

Sent To  Coldwell Banker Home Loan
Street, Apt. No.; or PO Box No.  3000 Leadenhall Rd
City, State, ZIP+4  Mount Laurel, NJ 08054

PS Form 3800, August 2006

---

**U.S. Postal Service** TM
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

GARDEN CITY NY 11530

| | | |
|---|---|---|
| Postage | $ | $5.10 |
| Certified Fee | | $2.85 |
| Return Receipt Fee (Endorsement Required) | | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $10.25 |

0133

MAIN STATION Postmark Here 29 2011

08/29/2011

Sent To  Cullen & Dykman LLP
Street, Apt. No.; or PO Box No.  100 Quentin Roosevelt Blvd
City, State, ZIP+4  Garden City N.Y. 11530

PS Form 3800, August 2006    See Reverse for Instructions

---

WHITE PLAINS MPO STA.
WHITE PLAINS, New York
106061953
3590960133-0098
08/29/2011 (800)275-8777 01:20:32 PM

======== Sales Receipt ========

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| PARSIPPANY NJ 07054 | | | $5.10 |
| Zone-1 Priority Mail | | | |
| 10.70 oz. | | | |
| Expected Delivery: Wed 08/31/11 | | | |
| Return Rcpt (Green Card) | | | $2.30 |
| Certified | | | $2.85 |
| Label #.    7010278000019664568 | | | |
| Issue PVI: | | | $10.25 |
| GARDEN CITY NY 11530 | | | $5.10 |
| Zone-1 Priority Mail | | | |
| 10.20 oz | | | |
| Expected Delivery: Wed 08/31/11 | | | |
| Return Rcpt (Green Card) | | | $2.30 |
| Certified | | | $2.85 |
| Label #:    7010278000019664551 | | | |
| Issue PVI: | | | $10.25 |
| Total: | | | $20.50 |

Paid by:
Cash                                    $21.00
Change Due:                             -$0.50

Order stamps at usps.com/shop or
call 1-800-Stamp24. Go to
usps.com/clicknship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
*******************************
*******************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
*******************************
*******************************

Bill#:1000201080719
Clerk:03

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business